### SAMUEL A. SHIELDS v. JOHN IVEY.

In an action of ejectment, the entries of rent paid by and receipts given therefor to tenants, by a person since deceased, are not admissible as evidence of her adverse possession.

---

On rule to show cause why new trial should not be granted.

Argued at November Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the plaintiff, *Edmunds & Edmunds.*

For the defendant, *Alward & Hildreth.*

The opinion of the court was delivered by

SCUDDER, J.   An action of ejectment was brought by the plaintiff against the defendant, to recover possession of a house and lot of land at Cape May, and a verdict rendered for the plaintiff.

The title of the plaintiff, on which he based his action, was an adverse possession for twenty years by his mother, Jane A. Shields, under whom he claimed, by descent, an undivided half of the property. The title of the defendant was a clear paper title, by successive deeds, from Samuel A. Shields and Jane A., his wife, to Nancy M. Ivey, dated November 20th, 1856; Andrew M. Ivey and Nancy M. Ivey, his wife, to Henry Ivey, dated November 19th, 1861; Henry Ivey and wife to John Ivey, dated September 18th, 1874. All of these deeds were recorded.

The plaintiff also offered, as evidence of his title and of the nature of the entry and possession of Jane A. Shields, a deed of conveyance from Andrew M. Ivey and Nancy, his wife, to Jane A. Shields, dated February 7th, 1866, recorded November 3d, 1866. Under this deed, it was claimed that the mother of the plaintiff held open, notorious, continuous and adverse possession from February 7th, 1866, the date of the deed, until her death on January 16th, 1887, a full period of twenty years.

This latter deed was, so far as appears by the evidence, without consideration, and a fraudulent attempt to reconvey the property by Andrew M. Ivey and Nancy, his wife, who was a daughter of Jane A. Shields, back to her, after they had conveyed the same for a full consideration to Henry Ivey. It was taken with constructive notice of his deed, which was recorded, and there was evidence of her actual knowledge of this former conveyance. If obtained by fraud, or with actual knowledge that the grantor had no power to convey, the deed will give to such fraudulent grantee no color of title, and will avail nothing, against one having a complete paper title. But although an entry and disseizin were fraudulent and tortious, the disseizer should have the benefit of the statute of limitations, if the land is held against the title of the true owner by an actual, exclusive, adverse, hostile, visible or notorious, continued and uninterrupted possession for twenty years. *Den v. Hunt, Spenc.* 487; *Foulke v. Bond,* 12 *Vroom* 527.

The doctrine of adverse possession is to be taken strictly,

and such possession is not to be made out by inference, but by clear and positive proof. *Tyler Eject. & Ad. Enj.* 885. This adverse holding the plaintiff attempted to show, not by the actual occupancy of the building and land by his mother, Jane A. Shields, under whom he claimed, by descent, but by the possession and payment of rent to her by tenants from time to time, for the statutory period. The possession of tenants, holding under her, would be evidence of her possession, and their open, visible or notorious acts, by occupying and cultivating the land, would be notice to all claiming title that her holding was adverse and hostile. The fact, also, that she entered under color of title, by a deed of conveyance to her, is evidence of the nature of the entry, the *quo animo*, and of the extent of the claim of title, if the conveyance was taken without actual fraud.

The case was determined by the jury on this adverse possession of Jane A. Shields, by a succession of tenants occupying the dilapidated house for short, and frequently interrupted, periods of time; and of the land, by cultivation of other tenants with almost equal irregularity of holding—the plaintiff's contention being, that Andrew M. Ivey, his brother, was permitted to lease, or use the land, as his agent, and make what he could, to pay taxes and expenses, with the privilege to keep what he needed, and pay any balance over to him; and that he conveyed the property to Mrs. Shields, either fraudulently, or to enable her to collect and receive the rents to aid in the support of his children, who lived with her after the decease of Andrew M. Ivey's wife, without any design, or expectation that he might thereby defeat his title.

The main objection to the evidence of the possession of tenants under Mrs. Shields, was the form in which it was presented. It was competent to show by them, that they had rented the premises of her and paid rent to her. But the plaintiff also offered receipts for rent, given by her to persons said to be her tenants, and a memorandum book of rents received, in the handwriting of Jane A. Shields, which were admitted as evidence of adverse possession by her of the

premises in controversy. They were admitted on the ground that they were the admissions of a deceased person made against her interest. The leading case on this subject, *Highham* v. *Ridgway*, 10 *East* 109, 3 *Sm. Lead. Cas.* 1607 (*ed.* 1888), is to the effect, that if a person have peculiar means of knowing a fact, and make a written entry of that fact, which is against his interest at the time, it is evidence of the fact as between third persons after his death. 1 *Greenl. Evid.* 147, &c.; *Jones* v. *Howard*, 3 *Allen* (*Mass.*) 223. This kind of evidence is said to constitute an exception to the general rule, which excludes evidence of the acts of third persons as hearsay, and *res inter alios acta*. It has always been received with caution and reluctance by the courts in this country, and only because, in most cases, it is the only evidence attainable; and with strong assurance of its truthfulness, from the manner in which the entries are made in the usual and ordinary course of business, against the interest, or without incentive to misrepresent on the part of the person making them, who is deceased, or cannot be produced to testify. This is manifested in the cases which will be found cited in the notes to the leading case above referred to.

This case is not within the rule, for here the receipts for rent, and the memorandum book of Jane A. Shields, were offered by her son, the plaintiff, to show that she was in possession of the land in controversy, claiming adversely to the defendant. They are not, therefore, the acts of a disinterested third party against interest, but the declarations of the person under whom the plaintiff claims title by privity of estate, making evidence for herself and for him. Declarations made by the deceased in her lifetime, that she was the owner in possession of these lands by a title hostile to the defendant, would not be admissible in evidence, nor are her entries of rent received, in a private memorandum book, of any more efficacy, against the defendant. Neither is the case within the rule of *Price* v. *Earl of Torrington*, *Salk.* (1 *Sm. Lead. Cas.*) 285, which admits in evidence entries made by a person having

knowledge of the fact entered, contemporaneous therewith, and in the usual course of business.

This evidence offered at the trial to cover portions of the time in which it was claimed that Jane A. Shields held possession adversely to the defendant's title, should have been excluded. How far it affected the minds of the jury in deciding the case we are unable to determine; nor are we satisfied that the verdict is right, irrespective of this illegal evidence.

The rule for new trial will be made absolute.