35 N.J. Super. 291 (1955)
114 A.2d 10
ROY S. DeBOW, PLAINTIFF-APPELLANT,
v.
BESSIE LETSON HATFIELD, WIDOW OF GEORGE ELY HATFIELD, DECEASED, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1955.
Decided May 12, 1955.
*292 Before Judges GOLDMANN, FREUND and CONFORD.
*293 Mr. Hugh C. Spernow argued the cause for appellant (Messrs. Hunziker and Hunziker, attorneys).
Mr. Samuel Morris argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The present appeal involves the Tax Act of 1903 (c. 208), long a source of litigation and still exhibiting a flicker of life despite legislative interment in 1930. L. 1930, c. 37, p. 202, repealing §§ 1 to 26, 32 to 60. Plaintiff relied upon that act in bringing his quiet title action in the Chancery Division. He appeals from the final judgment entered in defendants' favor.
The action was prosecuted pursuant to N.J.S. 2A:62-1 et seq. It was determined on defendants' motion for summary judgment, on the basis of the pleadings, the stipulations in the pretrial order, oral stipulations and affidavits. These reveal the following factual setting:
On May 3, 1919 the Collector of Taxes of Pequannock Township, Morris County, sold to plaintiff the premises in question, assessed in the name of Walter H. Mead as owner, for taxes due for the years 1915 to 1918, inclusive. Although the certificate of tax sale describes the premises as comprising 13 acres, it is agreed that only 2.25 acres along Brook Valley Road in the township were involved. The certificate states that the property was "struck off and sold to Roy DeBow for the term of 20 years, from the date of the sale, he, the said Roy DeBow, having bid and agreed to take the said real estate for the shortest term of years for which any person would take the same and pay the amount of taxes with the interest thereon and costs of sale." A tax sale on such terms was permitted by L. 1903, c. 208, § 52, p. 428. The certificate also recited, in conformance with the statute, that the right of the owner or any other person having either a legal or equitable interest in the property to redeem the same would expire on May 3, 1921. The tax collector delivered the certificate to plaintiff on May 13, 1919, and on July 2, 1919 plaintiff recorded it in the county clerk's office as a mortgage. *294 L. 1903, c. 208, § 56, p. 430. Thereafter, and on May 8, 1922 (five days after the time for redemption had expired), plaintiff recorded the certificate in the county clerk's office as a deed. Annexed to the certificate were the required search for tax and assessment liens, the tax collector's certificate of non-redemption, affidavit of publication of notice to redeem, and plaintiff's affidavit of posting of notice of redemption. This second recording of the certificate met the statutory requirements. L. 1903, c. 208, §§ 56 and 59, pp. 430 and 432.
It is undisputed that Walter H. Mead was the record owner of the premises at the time of the sale; that defendants are his heirs-at-law claiming to be seized and entitled to undivided interests in the premises in varying fractional parts; that immediately after plaintiff received his certificate of tax sale he entered into possession of the premises and has been in continuous and peaceable possession thereof ever since; that he used the property for general truck gardening, pastured his horse there, and frequently planted winter rye for harvesting in the following spring; and that he has paid all taxes assessed against the premises since entering into possession.
By his amended complaint, plaintiff claims that on May 8, 1922 the Pequannock Township tax collector "conveyed" the lands in question to him for a full and valuable consideration; that the conveyance was recorded as a "deed"; that he entered into possession in May 1919 and has "continuously and interruptedly and openly used and occupied" the lands and has cleared and improved them by tilling and cultivation; that his title is denied and disputed by defendants who claim to own the same or some part thereof; and, finally, that no suit is pending to enforce or test the validity of these claims.
Defendants by their answer deny the lands were "conveyed" to plaintiff, or that the recorded instrument is a deed, or that plaintiff has any title to, right to possession of, or legal interest in any of the lands described in the amended complaint. They set up their several interests and claim that any right which plaintiff had under his certificate of *295 tax sale expired May 3, 1939, since which time he has deprived them of their right to possession of the premises. In their answer  and this should properly have been done by way of counterclaim  defendants demand judgment that plaintiff has no right, title or interest in the lands in question and that their title is good and perfect.
The pretrial order set up three issues: (1) whether the interest which plaintiff acquired at the tax sale terminated on May 3, 1939 by reason of the limitation contained in the tax sale certificate; (2) whether his possession of the premises has been "adverse and hostile" since July 2, 1919 (the date the certificate was recorded as a mortgage); and (3) whether defendants, in the event that title is determined to be in them, may be required to reimburse plaintiff for taxes paid by him since 1919. On defendants' motion for summary judgment the court rendered an oral opinion holding that plaintiff had no right or interest in the premises, but that defendants' title was good and they were entitled to immediate possession. The court further held that defendants need not reimburse plaintiff for taxes he had paid. Final judgment was entered accordingly, and this appeal followed.
Plaintiff claims he was entitled to a judgment because he took possession of the land soon after receiving the tax sale certificate, recorded the certificate as a mortgage and then as a deed, used the land and enjoyed peaceable possession since the date of entry, paid all taxes, and claimed ownership. We do not agree that under the circumstances here presented he may now raise his limited interest in the premises to the dignity of a fee title.
By recording his tax sale certificate as a mortgage  one of the alternate procedures available to plaintiff under the 56th section of the 1903 Tax Act  plaintiff became entitled "to the immediate possession of the property sold * * * and to all the rents and profits thereof from and after the date of the certificate, for the term of the sale or until redemption; * * *." The recording was notice to the world of his lien and of his right to possession and the enjoyment of the rents and profits. By re-recording the certificate, with *296 the above-described instruments annexed, as a deed, plaintiff effectively barred for a period of 20 years the right of redemption of any party having an interest in the land; the notice and affidavits attached to the certificate and the record thereof became "presumptive evidence of the service [of the notice to redeem] and facts therein stated"; and any cutting of timber by plaintiff after the time to redeem had expired did not constitute waste. L. 1903, c. 208, § 59, p. 432.
Having filed the certificate and the annexed papers as a deed, plaintiff had the right, as against the original owner or anyone claiming through or under him, to the exclusive possession and enjoyment of the land until May 3, 1939. Defendants could not reenter or demand surrender of the premises until after that date. Pratt v. Roseland Railway Co., 50 N.J. Eq. 150 (Ch. 1892).
At the inception of this cause plaintiff based his claim to the premises strictly upon his tax sale certificate. There can be no doubt of this: the affidavit he submitted to the court speaks throughout of the certificate and the recording thereof as a deed, and that plaintiff's possession was "under claim of title by the instrument." This language was later exscinded when defendants stipulated that with this and a few other minor changes, the affidavit might be used in lieu of taking plaintiff's testimony. The amended complaint also relies upon the recorded certificate. In his brief, however, plaintiff shifts his ground and states that he is "relying upon the strength of his possession"; "It is not the plaintiff's position that he is relying upon the tax sale proceedings for his title. He relies upon his possession. His tax sale certificate is evidence of the nature of his entry, and the deed, whether defective or not, merely gives color to his entry." If possession, and nothing more, were truly the foundation for plaintiff's claim of title, then everything he did in the period from 1919 to 1922 would be meaningless  his recording of the certificate as a mortgage; his posting of notice to redeem, wherein he states he is "now the owner of the annexed Certificate of Sale" (which certificate clearly sets forth that he has a 20-year term) and that any party in *297 interest may redeem the property on or before May 3, 1921; and his re-recording of the certificate as a deed.
Plaintiff first sets up the 20-year statutes of limitation, N.J.S. 2A:14-6 and 7, as a bar to defendants' claim of title. These statutes were formerly R.S. 2:24-12 and 13; Rev. 1877, §§ 16 and 17 (C.S., p. 3169, §§ 16 and 17). The history of this legislation may be found in Spottiswoode v. Morris and Essex R. Co., 61 N.J.L. 322 (Sup. Ct. 1898); Lehigh Valley R. Co. v. McFarlan, 43 N.J.L. 605 (E. & A. 1881); and Den ex dem. Johnson v. Morris, 7 N.J.L. 6 (Sup. Ct. 1822). It has long been held that possession for the statutory period must be adverse if it is to be effective; mere possession for 20 years will not constitute a bar. Colton v. Depew, 60 N.J. Eq. 454 (E. & A. 1900).
Plaintiff also claims title by reason of 30 years' undisturbed possession, citing N.J.S. 2A:14-30 which provides:
"Thirty years' actual possession of any real estate excepting woodlands or uncultivated tracts, * * * uninterruptedly continued by occupancy, descent, conveyance or otherwise, shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate, woodlands or uncultivated tracts, and shall be a good and sufficient bar to all claims that may be made or actions commenced by any person whatsoever for the recovery of any such real estate, woodlands or uncultivated tracts."
This statute was formerly R.S. 2:25-1, deriving from Rev. 1877, p. 598, § 23 (C.S., p. 3172, § 28), as amended by L. 1922, c. 188, § 1. To be effective, 30 years' possession under the statute must be adverse. Content v. Dalton, 122 N.J. Eq. 425 (E. & A. 1937).
The principle on which the doctrine of title by adverse possession rests is too well settled to require citation. The possession must be actual and exclusive, open and notorious, continued and uninterrupted, and hostile for the statutory period. Plaintiff's possession had all these qualities except that it was not truly hostile. His possession was rightful and not by wrong in its inception, for he entered upon the lands as holder of a tax sale certificate. His continued *298 possession could not become tortious and adverse except by some act on his part which indicated a disavowal of his being in possession merely as one entitled to a 20-year term under the certificate, and that as an adverse possessor he was claiming full title against the true owner and the whole world. The record is clear that from 1919 to 1939 plaintiff's possession and use of the lands was intended to be under and in complete conformity with the tax sale to him, which was not of the fee but of a 20-year term only. Such possession has been described as analogous to that of a tenant holding under a lease for a definite term. The analogy is admittedly a loose one because plaintiff's interest did not derive from the owner or one standing in his right, but was a new, original and independent interest in the nature of a grant from the sovereign authority. See Metropolitan Life Ins. Co. v. McGurk, 15 N.J. Misc. 572, 573 (Circ. Ct. 1937), affirmed 119 N.J.L. 517 (E. & A. 1938); 5 Thompson on Real Property (perm. ed. 1940), § 2929, p. 951.
In short, plaintiff may not prevail because there is lacking here the existence of an intention  at least for the period ending May 3, 1939  to claim the fee, and the doing of some act indicative of such intention, which would have converted his occupation of the land into an adverse possession. Cf. Bedell v. Shaw, 59 N.Y. 46 (Ct. App. 1874), and see Leport v. Todd, 32 N.J.L. 124, 131 (Sup. Ct. 1866). The obligation to prove all of the constituent elements of adverse possession falls upon the party alleging such a claim. Morrissey v. Jackson, 3 N.J. Super. 365 (Ch. Div. 1949). The claim must be established "beyond a reasonable doubt," Rowland v. Updike, 28 N.J.L. 101 (Sup. Ct. 1859). There must be "positive evidence of the continuity and territorial extent of the possession," Baldwin v. Shannon, 43 N.J.L. 596, 603 (Sup. Ct. 1881); "clear and positive proof," Shields v. Ivey, 52 N.J.L. 280, 282 (Sup. Ct. 1890); "clear and convincing evidence," Northern R.R. Co. of New Jersey v. Demarest, 94 N.J.L. 68, 72 (Sup. Ct. 1920). Adverse possession must be "made out clearly and positively, by a *299 preponderance of the evidence," Mason v. Home Real Estate Co., 90 N.J. Eq. 455, 456 (Ch. 1919).
Whatever the quality of plaintiff's possession since the end of the 20-year term given him by his tax sale certificate, namely, since May 3, 1939, he is under no circumstances entitled to claim the fee. This quiet title action was brought 15 years after the end of that term  a period obviously short of the 20 years required in adverse possession cases.
We agree with the Chancery Division judge that defendants are not required to reimburse plaintiff for taxes paid since he first went into possession. From 1919 to 1939, when he held under the certificate, it was his obligation to pay taxes; had he failed to do so the township would have again sold the property for taxes and plaintiff would have been deprived of possession. During those 20 years he physically occupied the premises and enjoyed all the benefits of such possession, including the raising and harvesting of crops. He cannot in fairness ask the court to compel defendants to reimburse him for taxes paid. Plaintiff is in no better position as to taxes paid after May 1939. If, as he now argues, his possession was adverse to the true owners, he should pay taxes because he claimed to be and dealt with the lands as owner. And if his possession was not actually adverse, he continued to use and enjoy the premises, taking the rents and profits therefrom, and accordingly should have paid the taxes. Cf. Rodgers v. Cressman, 98 N.J. Eq. 209 (Ch. 1925); Merchants' and Traders' Realty Co., Inc. v. Stern, 101 N.J. Eq. 629 (Ch. 1927); Hildreth v. Vineland Trust Co., 104 N.J. Eq. 317 (Ch. 1929).
Affirmed.