69 N.J. Super. 447 (1961)
174 A.2d 381
FRANK CARUSO AND ALFINA CARUSO, HIS WIFE, PLAINTIFFS,
v.
ROBERT HUNT AND BETTY J. HUNT, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 11, 1961.
*449 Mr. Fred A. Gravino, attorney for plaintiffs.
Mr. George G. Tartar, attorney for defendants.
WICK, J.S.C.
This matter comes before the court as an action to quiet title to land located in the Township of Logan, County of Gloucester. The action was instituted on February 2, 1960 by plaintiffs, who claim as rightful owners of the land, against defendants claiming as adverse possessors.
The facts disclose that on April 26, 1952 plaintiffs purchased lands described in a deed from Angelina Pratta, which was recorded on April 29, 1952 in the office of the Clerk of Gloucester County. Plaintiffs' predecessor in title had purchased the land from Anna Matteo O'Brien and John O'Brien, her husband, by deed dated November 20, 1943 and recorded November 23, 1943. Anna Matteo O'Brien had purchased the land and premises from E. Arlington Jones, Sheriff of Gloucester County, by deed dated July 1, 1936 and recorded July 3, 1936, as the result of a mortgage foreclosure wherein the interest of Walter Rittenhouse, sometimes known as Walter Rittengouse, was foreclosed. Although he had no further interest in the property, Rittenhouse remained on the premises presumably until December 5, 1944, when he conveyed said land to Mildred and Harold Huber by deed recorded on December 13, 1944. The Hubers subsequently conveyed the lands to the present defendants on April 3, 1959, the deed being recorded on April 8, 1959.
*450 Defendants contend that plaintiffs are barred from claiming title to the lands in question by reason of N.J.S. 2A:14-6 which provides:
"Every person having any right or title of entry into real estate shall make such entry within 20 years next after the accrual of such right or title of entry, or be barred therefrom thereafter."
The main inquiry, therefore, is to determine whether defendants have a valid claim to the land by reason of adverse possession.
It has long been the law in this State that "To sustain a claim of title by adverse possession, one has the burden of proving by clear and convincing evidence, possession which is actual and exclusive, open and notorious, continued and uninterrupted, adverse and hostile for the statutory period." Foulke v. Bond, 41 N.J.L. 527, 545 (E. & A. 1879); Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954); De Bow v. Hatfield, 35 N.J. Super. 291 (App. Div. 1955), certification denied 19 N.J. 327 (1955); Mulford v. Abott, 42 N.J. Super. 509, 513 (App. Div. 1956). "`Hostile' means `with the intention to claim title against the true owner, and, * * *' [the] `use, which is claimed to be adverse was such that the owner knew or should have known that the disseizor intended to make title under it.' Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580, 588 (1950); Cobb v. Davenport, 32 N.J.L. 369 (Sup. Ct. 1867). * * *"
Defendants' contention of adverse possession for the 20-year statutory period is based upon the claim that their grantors' predecessor in title, Rittenhouse, made adverse entry upon the lands in question by deed dated October 17, 1924. Such a position seems highly untenable in view of the fact that Rittenhouse obtained possession through deed from the then rightful owners, Angelina and Pasquale Pratta. It is not conceivable how the entry of Rittenhouse could have been adverse when no one other than Rittenhouse claimed any interest in the land, and he owned a valid deed thereto. *451 It necessarily follows that the original entry by Rittenhouse on the land was rightful and undisputed, and remained so until July 1, 1936, the date of the deed resulting from the mortgage foreclosure. Such period, therefore, cannot be considered as constituting any part of the 20-year statutory period required for adverse possession.
Dispute does arise, however, as to the nature of Mr. Rittenhouse's possession for the period beginning with the date of the sheriff's deed until the subsequent conveyance by him on December 5, 1944 to defendants' grantors, Mildred and Harold Huber. During this period, spanning some eight years, Rittenhouse remained on the premises although he no longer retained any legal interest in the property.
There is evidence to the effect that certain taxes on the property were assessed against and paid by Mr. Rittenhouse subsequent to 1936. This in itself would hardly satisfy the elements necessary to qualify one as an adverse possessor, but must be considered as a factor, which, when added to all other factors, will aid in determining the true character of Rittenhouse's possession. It has been held that payment of taxes is not an act of hostility, Brewster v. Herron, Okl., 267 P.2d 143, 38 A.L.R.2d 335, 346 (1952); Foulke v. Bond, 41 N.J.L. 527, 544 (E. & A. 1879).
The rule in matters of this nature was well stated by Judge Jayne in Morrissey v. Jackson, 3 N.J. Super. 365, 367 (Ch. Div. 1949), wherein he said:
"The nature and character of the possession is a question of fact, and the obligation to prove all of the constituent elements of adverse possession devolves upon the party who alleges such a claim. Possession as a presumption of law is intended only in favor of the holder of the legal title."
It is, therefore, incumbent on defendants to prove that possession of the premises in question has been hostile, under a claim of right, actual, open, notorious, exclusive and continuous, Rheinfort v. Abel, 80 A. 1059 (N.J. Ch. 1910), for the statutory period of 20 years. In order to establish *452 this, defendants must show that the continued possession of the mortgagor, Rittenhouse, after foreclosure of the mortgage and sale of the premises, was adverse to the purchaser at the foreclosure sale. Defendants have produced no authority to support this view and apparently with good reason, for while New Jersey law is devoid of cases on point, the general rule is to the contrary. As set forth in 2 C.J.S. Adverse Possession § 105, page 659:
"The owner's continued possession after sale of the property at execution, judicial, or like sale is that of a tenant at sufferance of the purchaser, and is not hostile to the purchaser without a clear repudiation of his title and assertion of hostile claim, and in the absence of all testimony manifesting the actual character of his holding, his possession is regarded as consistent with the title of the purchaser."
The requirement of hostility necessary to support any claim of adverse possession has been construed to mean, "a user under a claim of right, pursued with an intent to claim as against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by the claimant before the period of adverse possession has elapsed." Predham v. Holfester, 32 N.J. Super. 419, 423 (App. Div. 1954).
It does not appear that the occupancy by Rittenhouse after the foreclosure sale bore any semblance of such hostility until December 5, 1944, on which date he actively undertook to convey the premises to the Hubers, defendants' predecessors in title. Accordingly, the 20 year statutory period necessary to obtain title by adverse possession will not expire until 1964.
The court, therefore, feels compelled to sustain plaintiffs' position by concluding that defendants have merely shown naked possession in Rittenhouse from July 1, 1936 to December 5, 1944. The burden of proof has not been carried to establish that the possession of Rittenhouse was hostile to Anna Matteo O'Brien or her successor in interest prior to the deed of Rittenhouse in 1944.
Judgment for plaintiffs will accordingly be entered.