**In the Matter of R. R. S., INC., Debtor.**

**STRASSER, INC., Plaintiff,**

**v.**

**R. R. S., INC., Defendant.**

**Bankruptcy No. 80–1571 C.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Dec. 29, 1980.

Robert H. Schultz, Bradenton, Fla., for plaintiff.

Chris C. Larimore, Bradenton, Fla., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a pleading entitled "Petition for Declaratory Relief and Modification of Stay." The pleading, treated as a complaint, was filed by Strasser, Inc. (Strasser) against R.R.S., Inc. dba Sweet Water Cafe & Pub (RRS). Strasser seeks a declaration by this Court that a certain lease between Strasser and RRS was effectively terminated prior to the Debtor's filing a petition in this Court and also seeks a vacation of the automatic stay in order to permit Strasser to complete an eviction proceeding against RRS, an action which is now pending in a state court, but now stayed by the automatic stay imposed by § 362(e) of the Bankruptcy Code. The matter came on for Preliminary Hearing scheduled pursuant to § 362(e) of the Bankruptcy Code. Although no testimony was presented at the hearing, the record reveals the following undisputed facts:

On July 12, 1979, Strasser, the owner of certain real property located in Manatee County, Florida, entered into a lease agreement with RRS and leased the premises involved in this controversy for a five year term commencing on the 15th day of July, 1979. The lease provided inter alia in ¶ 5 that the failure of the tenant to pay rent constitutes a default and that in the event of a default in any of the provisions set forth in the lease, the landlord has an option to give written notice to the lessee, and if the tenant fails to cure the default within three days from the date of the notice, the landlord will be entitled, at its election, to cancel and terminate the lease; remove all persons and property from the premises by summary procedures and pursue such other remedies as may be permitted by law. The lease also provides that all the remedies are separate and cumulative.

It is further without dispute that on August 28, 1980, counsel for the landlord notified RRS in writing that unless the default of RRS by virtue of nonpayment of rent is cured and the arrearage in the rent is paid within three days, RRS is to vacate the premises forthwith or face summary proceedings. The record further reveals that shortly after receiving the notice Strasser filed a summary distress proceeding in the County Court in Manatee County and on October 14, 1980, the county judge entered a final judgment in favor of Strasser and

against RRS and awarded possession of the premises to Strasser. The final judgment provided that in the event the premises are not vacated forthwith, the clerk shall issue a writ of possession to be executed by the sheriff. The final judgment also awarded a money judgment in the amount of $1,768 together with costs and attorney's fees in favor of Strasser and against RRS.

By virtue of the intervention of the bankruptcy proceeding, the sheriff holding the unexecuted writ of possession refused to proceed with the eviction action due to the uncertainty of whether or not the automatic stay imposed by § 362(e) would prohibit any further action against RRS.

It is the contention of the plaintiff, Strasser, that the lease was effectively terminated prior to the intervention of the bankruptcy, therefore, RRS no longer has any cognizable legal or equitable rights under the lease and, therefore, the automatic stay affords no protection to the debtor and Strasser should be permitted to proceed to complete the eviction proceeding and enforce the judgment of the county court notwithstanding the intervention of bankruptcy. On the other hand, RRS contends that the lease was never terminated and under the applicable provisions of the Bankruptcy Code, it should be entitled to the continuing protection accorded to debtors by § 362(e) and that it would be entitled to either assume or reject the lease, admittedly with the proviso that it will cure the default in the event it decides to assume the lease. § 365(b)(1)(A), (B), (C) of the Bankruptcy Code.

█ The automatic stay is one of the most fundamental debtor protection devises provided by the Code. There is no doubt that the scope of the protection is broad and was designed to reach all proceedings. The question of whether or not was the lease effectively terminated prior to the intervention of bankruptcy and if it was, is a mere naked possession an interest which would be protected by the automatic stay of § 362 of the Bankruptcy Code.

. In *In re G. S. V. C. Restaurant Corp.*, 3 B.R. 491, 2 CBC 2d 727 (Bkrtcy.S.D.N.Y.

1980), the Court found that even where a warrant of eviction was obtained for a lease terminated prior to the intervention of bankruptcy proceedings, the Debtor still enjoyed a *de facto* right of possession which was an equitable interest with a "sufficient nexus to invoke the protection of the automatic stay." *Id.* at 730. The Court went on to hold, however, that the stay should be lifted inasmuch as the debtor's delaying tactics combined with lack of adequate protection warranted judgment for the creditor. The fact that the automatic stay gives limited and temporary protection to a holdover tenant debtor based solely on naked possession does not mean that there is a viable executory contract which the debtor can assume under § 363 of the Bankruptcy Code. There are numerous cases which have dealt with the question of a debtor's ability to assume a lease which was either terminated or had expired prior to the intervention of bankruptcy. The courts have been uniform in concluding that once a lease is terminated, other than by an *ipso facto* forfeiture clause, it cannot be given new life and the court is certainly not in a position to rewrite the terms of a new lease. *In re Schokbeton Industries, Inc.*, 466 F.2d 171 (5th Cir. 1972); *In re James Beck dba J. C. Penney's Beauty Salon*, 5 B.R. 169, 6 BCD 1119 (Bkrtcy.D.Haw.1980); *Thompson v. Texas Mexican R. R.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439 (1973); V. Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 749 (1974). Professor Countryman in his article writes that when lease agreements have been terminated, they cease to become assumable because once the agreement is terminated, there is no executory agreement. In a recent decision which involved the same question, the court held that where lease agreements were validly terminated, tenants were holding over and no executory interest was available for debtors–in–possession to assume, therefore, sufficient cause existed to lift the stay); *In re Mimi's of Atlanta, Inc.*, 5 B.R. 623 (Bkrtcy.N.D.Ga.

1980); cf. *In re Fountainbleau*, 515 F.2d 913 (5th Cir. 1975).

In light of the foregoing, this Court is satisfied that the automatic stay provision of § 362(e) of the Bankruptcy Code does protect the debtor's naked right of possession of the premises, but for a very limited time only. *In re G. S. V. C. Restaurant Corp., supra.* This is so because the fact that the automatic stay continues in effect and protects the naked right of possession, it does not have any bearing on the continued viability of a lease agreement. Once the lease is terminated prior to the intervention of bankruptcy, the landlord–tenant relationship is gone regardless of the protection of the right to possession. As stated by Judge Brown in *Schokbeton, supra* the

> "Debtor's rights . . . . evaporated upon receipt of the written notice of termination, and neither the mere filing of the arrangement petition, nor the referee's order purporting to extend the grace period for cure of the default nor a mystical combination of both could effect their recondensation." *Id.* at 176.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the oral motion for summary judgment made on behalf of Strasser, Inc. be, and the same hereby is, granted. A separate final judgment will be entered in accordance with the foregoing.

DONE AND ORDERED at Tampa, Florida on December 29, 1980.